**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330090)
scott@edelsberglaw.com
Adam A. Schwartzbaum (admitted *Pro Hac Vice*)
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

*Attorneys for Plaintiff*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

REBEKKA LIEN, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

YANKA INDUSTRIES, INC. d/b/a MASTERCLASS,

Defendant.

No. 3:24-cv-08007-TLT

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT YANKA INDUSTRIES, INC. d/b/a MASTERCLASS'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

**Date**: TBD
**Time**: 2:00 p.m.
**Dept**: Courtroom 9 – 19th Floor
**Judge**: Honorable Trina L. Thompson

# TABLE OF CONTENTS


INTRODUCTION ........................................ 1

STATEMENT OF FACTS THAT MUST BE ACCEPTED AS TRUE ........................................ 3

LEGAL STANDARD ........................................ 4

ARGUMENT ........................................ 5

I. PLAINTIFF BECAME A MASTERCLASS "CONSUMER" BY SUBSCRIBING TO A VIDEO TAPE SERVICE PROVIDER'S SERVICES ........................................ 5

A. The VPPA Does Not Require a Consumer's Subscription to a Video Tape Service Provider's Goods and Services to Grant Access to Exclusive Video Content ........................................ 5

B. The FAC Sufficiently Alleges Plaintiff Became a Subscriber of MasterClass's Services When She Subscribed for a MasterClass Account. ........................................ 11

II. THE FAC SUFFICIENTLY ALLEGES MASTERCLASS KNOWINGLY DISCLOSED PLAINTIFF'S PERSONALLY IDENTIFIABLE INFORMATION ........................................ 15

A. The FAC Explains How MasterClass Disclosed Information that Would Allow an Ordinary Person to Identify Her. ........................................ 15

B. The Complaint Sufficiently Alleges that MasterClass's "Knowingly" Made Disclosures of Personally Identifiable Information to Meta. ........................................ 19

CONCLUSION ........................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 4

*Bustamante v. Napolitano*,
582 F.3d 403 (2d Cir. 2009) .... 10

*Cal. Restaurant Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) .... 9

*Campidoglio LLC v. Wells Fargo & Co.*,
870 F.3d 963 (9th Cir. 2017) .... 4

*Carter v. Scripps Network, LLC*,
607 F. Supp. 3d 90, (S.D.N.Y. Apr. 24, 2023) .... 8

*Corley v. United States*,
556 U.S. 303 (2009) .... 9

*Czarnionka v. Epoch Times Ass'n, Inc.* ("*Czarnionka II*"),
2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) .... 16, 18

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .... 5, 16, 17

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .... 12, 13

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018) .... 8

*Fan v. NBA Props. Inc.*,

No. 23-cv-05069-SI, 2024 WL 1297643, (N.D. Cal. Mar. 26, 2024) .......................... passim

*Feldman v. Star Trib. Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. Mar. 7, 2023) ............................................................ 17

*Gardner v. MeTV*,
No. 22 CV 5963, 2024 WL 779728, (N.D. Ill. Feb. 15, 2024) ........................................... 14

*Ghanaat v. Numerade Labs, Inc.*, 6
89 F. Supp. 3d 714 (N.D. Cal. 2023) ..................................................................... 15

*Goldstein, et al. v. Fandango Media, LLC*,
Case No. 9:22-cv-80569-KAM (S.D. Fla. Mar. 7, 2023), ECF No. 57 ............................... 18

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010) ........................................................................................... 7

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) ................................................................... 12

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023) ..................................................................... 8

*In re Hulu Priv. Litig.* ("*Hulu I*"),
No. C 11-03764 LB, 2012 WL 3282960, (N.D. Cal. Aug. 10, 2012) ................................ 15

*In re Hulu Privacy Litig. ("Hulu II")*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .................................................... 16, 19

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................... 14

*Jackson v. Fandom, Inc.*,
No. 22-CV-04423-JST, 2023 WL 4670285, (N.D. Cal. July 20, 2023) ......................... 14, 17

*Jama v. Immigration and Customs Enforcement*,
543 U.S. 335 (2005) ........................................................................................... 8

*Kuzenski v. Uproxx LLC*,
No. 2:23-CV-00945-WLH-AGR, 2023 WL 8251590, (C.D. Cal. Nov. 27, 2023) .......... 14

*Kuzenski v. Uproxx LLC*,
No. 2:23-CV-00945-WLH-AGR, 2024 WL 5323420, (C.D. Cal. June 24, 2024) .......... 14

*Lebakken v. WebMD LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) .......... 17, 20

*M. K. v. Google LLC*,
No. 21-CV-08465-VKD, 2023 WL 4937287, (N.D. Cal. Aug. 1, 2023) .......... 14

*Markels v. AARP*,
689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) .......... 14

*Mata v Zillow Grp.*,
No. 24-cv-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 10, 12, 13

*Mendoza v. Caesars Ent., Inc.*,
No. 23-CV-03591, 2024 WL 2316544, (D.N.J. May 22, 2024) .......... 14

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 5

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) .......... 21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .......... 7

*Parks Sch. of Bus. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) .......... 5

*Rajah v. Mukasey*,
544 F.3d 427 (2d Cir. 2008) .......... 9

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997)....7

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ....passim

*Salazar v. Nat'l Basketball Ass'n*,
685 F. Supp. 3d 232 (S.D.N.Y. 2023)....6, 9

*Stark v. Patreon, Inc.*,
No. 22-CV-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022)....17, 20

*Sellers v. Bleacher Rpt., Inc.*,
No. 23-CV-00368-SI, 2023 WL 4850180, (N.D. Cal. July 28, 2023)....passim

*Simi Mgmt. Corp. v. Bank of Am. Corp.*,
2012 WL 1997232 (N.D. Cal. June 4, 2012) ....19

*Thornton v. Mindvalley, Inc.*,
No. 24-cv-00593-EKL, 2025 WL 877714, (N.D. Cal. Feb. 14, 2025) ....20

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ....13

**Statutes**

18 U.S.C. § 2710....1

18 U.S.C. § 2710(a)(1)....2, 5, 6, 8

18 U.S.C. § 2710(a)(4)....8, 9, 14

18 U.S.C. § 2710(b) ....9

18 U.S.C. § 2710(b)(1) ....19

**Rules**

Fed. R. Civ. P. 9(b) ....5

## INTRODUCTION

This is a consumer digital privacy class action complaint against Yanka Industries, Inc. d/b/a MasterClass ("MasterClass"), as the owner of Masterclass.com, for allegedly violating the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by its use and employment of Meta, Inc.'s ("Facebook") Pixel tracking tool. Specifically, without obtaining proper consent, MasterClass knowingly disclosed to Facebook data containing its digital subscribers' (i) personally identifiable information ("PII") or Facebook ID ("FID") and (ii) the computer file containing video and its corresponding URL viewed ("Video Media") (collectively, "Personal Viewing Information"). *See* ECF No. 10 ("FAC") ¶ 1. Based on the foregoing factual allegations, Plaintiff's FAC alleges a cause of action against MasterClass for violation of the VPPA and seeks to certify a class of similarly situated MasterClass subscribers. *Id.* ¶¶ 50–68.

Courts across the country, including this district, have denied motions to dismiss VPPA claims based on arguments identical to those raised by Defendant. Nevertheless, Defendant argues the Court should dismiss the FAC because Plaintiff is not a "subscriber" to MasterClass (as that term is defined in the VPPA), and Plaintiff does not sufficiently allege the "knowing" disclosure of her Personal Viewing Information by MasterClass to Meta. The Court should reject both arguments because the FAC sufficiently alleges that Plaintiff is a "subscriber" to MasterClass.com (and, therefore, a MasterClass "consumer") and that MasterClass disclosed her Personal Viewing Information knowingly.

*First*, Plaintiff sufficiently alleges she is a "consumer" under the VPPA because she is a "subscriber" to goods or services from MasterClass, a "video tape service provider." As the Second Circuit Court of Appeals recently held in the only appellate decision on this issue, MasterClass's narrow interpretation of the VPPA improperly limits claims by individuals who subscribe to a video tape service provider's website, newsletter, or mobile app, but do not in exchange receive access to exclusive video content unavailable to the public. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 546 (2d Cir. 2024) ("*Salazar*"). The VPPA distinguishes between two types of individuals: those who have a relationship with the video tape service provider (because they are a "renter, purchaser, or subscriber" of its "goods or services") and those who are unknown to the

video tape service provider. 18 U.S.C. § 2710(a)(1). VPPA does not empower a random person who watches a video on MasterClass's website to bring a VPPA claim because MasterClass has no consumer relationship with that person. Where, however, a person like Plaintiff subscribes to an account with MasterClass, they enter a business relationship with a video tape service provider. That relationship provides the consumer with VPPA's privacy protections. Where, as here, the video tape service provider is alleged to have violated those privacy rights by knowingly disclosing the subscribers' PII to a third party without their consent, the Court should permit their VPPA claim to proceed.

Further, the FAC sufficiently alleges that a MasterClass account is a "good or service" and Plaintiff is a subscriber of that good or service such that she is a "consumer" within the VPPA. Plaintiff alleges she became a digital subscriber to MasterClass.com by providing her "personal information to Defendant" in exchange for the ability to register for and log in to the MasterClass.com website and iPhone App. Plaintiff registered with the website by signing in with her Facebook account, which automatically shared her email address and other related personal information associated with her account, as well as her IP address (a unique number assigned to all information technology connected devices that informs Defendant as to subscribers' city, zip code, and physical location), the identifier on her mobile device, and/or cookies stored on her devices. Because Plaintiff registered for a website account by providing an admitted video tape service provider personal information in the form of their "email address", an "IP address" defendant can use to "identify city and zip code [s]he resides in as well as h[er] physical location," and "cookies associated with their device," she sufficiently alleges that she became a subscriber of the MasterClass website.

*Second*, Plaintiff sufficiently alleges the information Defendant disclosed (i.e. the FID) is PII under the VPPA and that MasterClass disclosed it "knowingly". Plaintiff alleges that, through use of the Pixel, MasterClass blatantly violated its subscribers' privacy by disclosing to Meta their FID and video viewing history. An FID is unique identifier tied to each Facebook user and corresponds to their public profile. Equipped solely with an FID *any* ordinary person can readily

identify an individual's Facebook profile revealing their real name, photos, and more identifying information. Further, Plaintiff alleges that MasterClass deliberately installed the Pixel on its website to track and collect its subscribers' data to build and profit from targeted advertising campaigns. Under substantial weight of authority, courts across the country have consistently agreed that allegations like those made by Plaintiff are sufficient to state a "knowing" disclosure of PII.

For these reasons, Plaintiff respectfully requests the Court enter an order denying the motion to dismiss [ECF No. 29] ("Motion").

**STATEMENT OF FACTS THAT MUST BE ACCEPTED AS TRUE**

MasterClass is an online platform offering a diverse array of courses delivered through prerecorded video lessons. FAC ¶ 21. It offers subscribers access to its website, MasterClass.com, where they can watch a broad selection of video media content. *Id.* ¶ 14. MasterClass installed the "Facebook Pixel" or "Pixel"—a snippet of programming code—on its website to transmit its subscribers' personal information to Facebook. *Id.* ¶ 4. When a subscriber watches a video on its website, MasterClass sends to Facebook the video content name, its URL, and most notably, the subscriber's Facebook Profile ID ("FID"). *Id.* ¶ 33. This occurs even when the subscriber has not shared—nor consented to share—such information. *Id.* ¶ 4. This transmission is not the digital subscriber's decision but results from Defendant's purposeful use of its Facebook tracking pixel by incorporation of that pixel and code into MasterClass.com's website or App. *Id.* ¶ 34.

An FID is a unique and persistent identifier that Facebook individually assigns to each user. *Id.* ¶ 34. Because the FID serves as a unique identifier for an individual's Facebook account, Facebook—or any other ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile. *Id.* ¶ 5. Simply put, by transmitting the subscriber's unique identifier together with the video they watched, MasterClass's use of the Pixel allows Facebook to know the video-watching habits of a specific user on MasterClass's website. *Id.*

The Pixel is an invisible tool that businesses, such as Defendant, employ to collect information and track consumers' actions on their websites in order to refine the business's targeted advertising. *Id*. ¶¶ 30–31. MasterClass installed the tracking Pixel because it benefits financially from the advertising and information services that stem from use of the Pixel. *Id*. ¶ 32. Specifically, Facebook uses the information to build a more detailed profile of its users, further enabling its ability to sell and display targeted digital ads to them on Facebook. *Id*. In exchange for using the Pixel, and at the expense of its subscribers' privacy, MasterClass uses the information received to build better targeted advertising on its website which, in turn, generates greater revenue. *Id*. ¶¶ 6, 32.

Since 2020, Plaintiff Rebekka Lien has been a subscriber to MasterClass's website and app. *Id*. ¶ 12. To subscribe to MasterClass's website, Plaintiff provided her personal information including her name and email address, among other personal information associated with her Facebook, to create an account. *Id*. ¶ 24. She also provided Defendant with her IP address, a unique number assigned to all information technology devices that informs Defendant as to a subscribers' city, zip code, and physical location. *Id.* ¶ 25. Subscribers, like Plaintiff, also provide Defendant the identifier on their mobile devices and cookies stored on their devices. *Id.* ¶ 27. During the relevant time period, she has used her MasterClass.com subscription to request, obtain, and view prerecorded video media through the website and/or app while logged into her Facebook account. *Id*. ¶¶ 13, 47. Plaintiff was unaware and never gave Defendant express written consent to disclose her personal viewing information. *Id*. ¶ 48.

**LEGAL STANDARD**

The Court accepts all factual allegations in the complaint as true and construes them together and in the light most favorable to Plaintiff. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 970 (9th Cir. 2017). Plaintiff need only set forth enough facts to state a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This test calls for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint on a motion to dismiss, a court must

"accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). In addition, a defendant's knowledge "may be alleged generally[.]" Fed. R. Civ. P. 9(b).

## ARGUMENT

The VPPA "protects generally a consumer's substantive privacy interest in his or her video-viewing history" and ensures that "consumers retain control over their personal information." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 & n.2 (9th Cir. 2017); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065–66 (9th Cir. 2015). By registering for an account with MasterClass, a "video tape service provider" under the VPPA, Plaintiff became a "subscriber of good or services" from MasterClass. 18 U.S.C. § 2710(a)(1). Furthermore, MasterClass violated Plaintiff's statutorily protected privacy interest in her Personal Viewing Information by knowingly transmitting her FID and viewing content to Meta, allowing Meta—or any ordinary person armed with the same information—to identify her private video-watching habits. Consequently, Plaintiff states a cause of action for violation of the VPPA.

### I. PLAINTIFF BECAME A MASTERCLASS "CONSUMER" BY SUBSCRIBING TO A VIDEO TAPE SERVICE PROVIDER'S SERVICES.

Defendant argues Plaintiff is not a "consumer" under the VPPA because (a) "the FAC does not allege that Plaintiff's free 'subscription' provided her with any *video* access or viewing benefits beyond what any non-registered visitor to the MasterClass website could access or watch" and (b) the FAC does not allege a subscriber relationship with MasterClass. The Court should reject these arguments by applying the most persuasive federal authorities to consider these issues, all of which support the conclusion that Plaintiff sufficiently states a VPPA claim.

#### A. The VPPA Does Not Require a Consumer's Subscription to a Video Tape Service Provider's Goods and Services to Grant Access to Exclusive Video Content.

Defendant's first argument is entirely predicated on whether Plaintiff sufficiently alleges her status as a "consumer" under the VPPA. Mot. at 6–13. VPPA defines "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18

U.S.C. § 2710(a)(1). MasterClass concedes that it is a "video tape service provider," which "means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" 18 U.S.C. § 2710(a)(4). It argues, however, that Plaintiff is not a consumer because "the FAC does not allege that Plaintiff's free 'subscription' provided her with any *video* access or viewing benefits beyond what any non-registered visitor to the MasterClass website could access or watch." Mot. at 12 (emphasis in original). MasterClass's argument relies entirely on a discredited line of district court cases concluding that a consumer's subscription must provide them access to "exclusive" video content unavailable to individuals who do not subscribe to MasterClass. Mot. at 7–9, 12–14. The Court should reject this argument because, as the Second Circuit Court of Appeals recently held, it misconstrues the VPPA's plain language and ignores its clear statutory purpose. *See Salazar*, 118 F.4th at 546.

In *Salazar*, the district court dismissed a complaint based on arguments identical to those raised by MasterClass. *See Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 254 (S.D.N.Y. 2023). In its opinion reversing the dismissal, the Second Circuit held that "nothing in the statute limits the definition of 'consumer' to those who rent, purchase, or subscribe to a particular class of services—namely, audiovisual content." *Salazar*, 118 F.4th at 546. Instead, the court of appeals found that "the plain language of the 'consumer' definition, the VPPA's terminology in other sections, and the structure of the statute as a whole" support the view that a subscriber (like Plaintiff) need not be a subscriber to "audio visual good or services," and that this interpretation "is entirely consistent with the statute's purpose." *Id.* at 546. The Court concluded that when an individual provides a video tape servicer provide like MasterClass with valuable personal information (including an email address) to register for their service, that person becomes a "subscriber" to the service regardless of whether it provides access to exclusive video content. *Id.* at 546–53.

MasterClass argues the Court should ignore *Salazar* because its "analysis conflicts with the Ninth Circuit's basic *contextual* approach to statutory interpretation—making it likely the

Ninth Circuit will agree with the district court decisions in this and other Circuits, rather than a single outlier from the Second Circuit." Mot. at 10–11 (emphasis in original). This argument fails because the principles of statutory interpretation applied by the Second Circuit mirror those applied by the Ninth Circuit and, as the Second Circuit reasoned, Plaintiff's interpretation of "consumer" accords with these principles while MasterClass's interpretation violates them.

To be clear, MasterClass asks this Court to apply the same rules of statutory interpretation used by the *Salazar* court. Both MasterClass and the Second Circuit agree that "[s]tatutory interpretation 'begins and ends with the text.'" Mot. at 7 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014)); *compare Salazar*, 118 F.4th at 546 ("When interpreting a statutory provision, we start with the text."). Both agree that "[i]n assessing the words' plain meaning, we consider 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Salazar*, 118 F.4th at 546 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *compare* Mot. at 7 (arguing the Court "does not look at individual words in isolation," but instead "must read the words in their context and with a view to their place in the overall statutory scheme") (citing *Tovar v. Sessions*, 882 F.3d 895, 901 (9th Cir. 2018)). And both agree that the interpretation should be "consistent with the statute's purpose." *Salazar*, 118 F.4th at 546; *compare* Mot. at 7 ("A court must 'give faithful meaning to the language Congress adopted in light of the evident legislative purpose in enacting the law in question.'") (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 298 (2010)).

The truth is that, applying the same rules of interpretation used in the Ninth Circuit, the *Salazar* court considered and rejected every single argument advanced by MasterClass in support of its misinterpretation of the VPPA. The Court should rely on the Second Circuit's persuasive reasoning to reach the same conclusion here and conclude that a subscription to a video tape service provider's services need not provide access to exclusive video content.

*Salazar*'s interpretation of the VPPA is truer to the plain meaning of the statutory text. "Congress defined 'consumer' as '*any* renter, purchaser, *or* subscriber of goods or services from a

[VTSP].'" *Salazar*, 118 F.4th at 546 (citing 18 U.S.C. § 2710(a)(1) (emphasis added by court)). "By using expansive words like 'any' and 'or,' Congress codified a 'consumer' definition that 'bespeaks breadth.'" *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018)).

This conclusion is "reinforced" by comparison of the VPPA's definitions of "consumer" and "video tape service provider." *Id.* at 547. While both definitions broadly apply to "any" person or subscriber, definition of "video tape service provider" "requires the provider to deal in 'audio visual materials,'" while the consumer definition does not limit the "good or services" to "audio visual" ones. *Id.* "This meaningful variation shows that Congress knew to include an audiovisual limitation in the VPPA when it wanted one to apply." *Id.* The Second Circuit emphasized that courts should not "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply," especially when it "has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Id.* (quoting *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005)).

This "textual divergence highlights the flaw in the NBA's argument"—parroted in MasterClass's Motion—"that the 'consumer' and 'video tape service provider' definitions share 'a suggestively parallel structure' that supports reading an audiovisual limitation into the definition of 'good or services.'" *Id.*; *compare* Mot. at 8–9 (citing *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1233 (S.D. Cal. 2023) (quoting *Carter v. Scripps Network, LLC*, 607 F. Supp. 3d 90, 98–99 (S.D.N.Y. Apr. 24, 2023)). As the Second Circuit explained,

> Congress chose to *deviate* from any parallelism by using the terms 'goods or services' in the 'consumer' definition and 'prerecorded video cassette tapes or similar audio-visual materials' in the 'video tape service provider' definition. Again, Congress's decision to use different words in different definitions strongly signals its intent to convey different meanings.

*Id.* (quoting *Jama*, 543 U.S. at 341) (emphasis supplied by Court).

In addition, MasterClass's "interpretation is hard to harmonize with other language in the statute." *Id.* For example, the VPPA's definition of "personally identifiable information" includes "information which identifies a person as having requested or obtained *specific video materials or services* from a video tape service provider." *Id.* (citing 18 U.S.C. § 2710(a)(4)) (emphasis in original). If the "goods or services" referenced in the definition of "consumer" "are, by definition,

audiovisual material, then Congress's express restriction in the definition of 'personally identifiable information' to information about '*video* materials or services' would be superfluous." *Id.* (citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (holding that a "statute should be construed ... so that no part will be inoperative or superfluous") (internal quotation marks omitted)).

The Second Circuit also addressed MasterClass's "reliance on the title of the VPPA's liability provision: "Video Tape Rental and Sale Records." *Id.* (citing 18 U.S.C. § 2710(b)). Like the NBA, MasterClass "argues that by explicitly tying 'video' to 'rental and sale records,' in that title, Congress showed that the relationship between consumers and providers is restricted to those who rent, purchase, or subscribe to videos." *Id.*; *compare* Mot. at 10. "There are at least two problems with this argument. First, headings and titles in statutes 'cannot limit the plain meaning of the text.'" *Salazar*, 118 F.4th at 548 (citing *Rajah v. Mukasey*, 544 F.3d 427, 436 (2d Cir. 2008) (internal quotation marks omitted)); *compare Cal. Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094, 1105 (9th Cir. 2024) ("the title of a statute … cannot limit the plain meaning of the text."). "Second, the title of the liability provision tells us little about the meaning of "consumer" in the VPPA." *Salazar*, 118 F.4th at 548. There is no dispute that sharing information that is not about video materials or services is beyond the scope of the statute. But "it's the definition of 'personally identifiable information' that limits what can be shared, not the definition of 'consumer.'" *Id.*

The Second Circuit was also unpersuaded by the NBA's argument—also parroted in MasterClass's Motion—"that the phrase 'from a video tape service provider' somehow cabins 'goods or services' to *audiovisual* goods or services." *Salazar*, 118 F.4th at 548; *compare* Mot. at 8 ("the definition of a 'consumer' … is cabined by the definition of 'video tape service provider.'"). The definition of "video tape service provider" is "broad, encompassing *any* person[] *engaged in the business* … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Salazar*, 118 F.4th at 548 (emphasis supplied by Court) (quoting 18 U.S.C. § 2710(a)(4)). "That definition is not limited to entities that deal *exclusively* in audiovisual content; rather, audiovisual content need only be *part* of the provider's book of business." *Id.*

> Thus, by its plain terms, the statute applies equally to a business dealing primarily in audiovisual materials (think Blockbuster) and one dealing in primarily non-audiovisual materials (think a general store that rents out a few movies). Congress cast a wide net in defining "video tape service provider," to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they also deal in non-audiovisual goods or services.
>
> Given that "video tape service provider" is defined broadly to include even those businesses that dabble in video rentals, it makes sense that "consumer" should be understood to encompass a renter, purchaser, or subscriber of any of the provider's "goods or services"—audiovisual or not. *Under the VPPA's expansive language, such a business may not disclose "personally identifiable information" pertaining to its consumers* ***regardless of the particular goods or services rented, purchased, or subscribed to.***

*Id.* at 548–49 (emphasis added).

The Second Circuit's interpretation "not only reflects the language and structure of the VPPA; it's also 'consistent with Congress's intended purpose.'" *Id.* at 549 (quoting *Bustamante v. Napolitano*, 582 F.3d 403, 410 (2d Cir. 2009). "Grafting unstated limitation on the broad definition of 'consumer'" would be "inconsistent with Congress's purpose to "prohibit[ ] video service provider from disclosing personally identifiable information except in certain, limited circumstances." *Id.* (citing S. Rep. N. 100-599)).

Since *Salazar* was decided, courts have begun to recede from the mistaken line of district court cases imposing an extratextual requirement that a person may only be a consumer under the VPPA if they subscribe to audiovisual goods or services. For example, in *Mata v Zillow Grp.*, No. 24-cv-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024), the district court found plaintiff to be a VPPA "consumer" based on allegations that plaintiff "registered for Defendant's website and created a[n] account" and then "viewed content as a registered user, which established a relationship with [Defendant] that is materially different from what would have been the case had [Defendant's website] simple remained one of millions of sites on the web that [Plaintiff] might have accessed through a web browser." *Id.* at *4. Defendant's peculiar argument that *Mata* adopts an interpretation of the VPPA contrary to *Salazar* (*see* ECF No. 33 at 4) ignores that *Mata* specifically *relies* on *Salazar* to conclude that a person who registers for a video tape service provider's website and creates an account sufficiently alleges they are a "subscriber" of Defendant's website and thus a "consumer" under the VPPA." *Id.* (citing *Salazar*, 118 F.4th at 552). Indeed, it is even easier for the Court to find Plaintiff subscribed to MasterClass's services

than it was for the *Mata* court because unlike the real estate website Zillow, which disputed it was a video tape service provider, MasterClass *concedes* it is in the prerecorded video business. As in *Mata*, the Court should follow *Salazar* and conclude Plaintiff sufficiently alleges she is a consumer under the VPPA.

**B. The FAC Sufficiently Alleges Plaintiff Became a Subscriber of MasterClass's Services When She Subscribed for a MasterClass Account.**

Next, Defendant argues Plaintiff's VPPA claim should be dismissed "because the FAC does not allege *any* subscriber relationship between her and MasterClass." Mot. at 14. This is simply untrue. The FAC's allegations concerning her relationship with MasterClass are materially identical to those in many cases where courts have denied motions to dismiss based on similar arguments, including the circuit courts of appeal and multiple courts in this district.

Plaintiff alleges that she began her "digital subscription to masterclass.com around 2020 and continues to maintain the subscription to this day." FAC ¶ 12. Plaintiff become a subscriber to MasterClass by creating an account through the Facebook signup process, which shared her email and related personal information associated with her Facebook account with MasterClass. *Id.* ¶ 24. Upon registering, she also provided MasterClass with her IP address, a unique number assigned to all information technology devices that informs Defendant as to a subscribers' city, zip code, and physical location. *Id.* ¶ 25. Plaintiff also provided MasterClass the identifier on her mobile devices and/or cookies stored on her device. *Id.* ¶ 26. MasterClass subscribers have access to a variety of prerecorded video media on Defendant's digital platforms. *Id.* ¶ 28. Since 2020, Plaintiff has used her MasterClass subscription to view prerecorded videos through the masterclass.com website and iPhone app. *Id.* ¶¶ 13, 46.

Accepting these allegations as true and construing them in a light most favorable to Plaintiff, the Court should conclude that the Complaint sufficiently alleges Plaintiff to be a "consumer" under the VPPA—especially because *Salazar* holds that, by supplying such personal information to MasterClass in exchange for an account and access to prerecorded video and media content on its website, Plaintiff became a "subscriber" under the VPPA. *See Salazar*, 118 F.4th at 552.

Long before *Salazar*, circuit courts of appeal distinguished between individuals who are not subscribers because they merely visited a website or downloaded an app and those who are because they took actions such as to "sign up for or establish an account[,]" "provide any personal information[,]" or "become a registered user[,]" among other things. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (explaining that subscriptions involve a variety of factors, including "payment, registration, commitment, delivery, [associated expression,] and/or access to restricted content") ("*Ellis* Factors"). "No single [*Ellis*] factor is dispositive. But, at its core, a subscription 'involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity.'" *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (citing *Ellis*, 803 F.3d at 1256). On balance, when accepting the FAC's allegations as true and drawing all inferences in Plaintiff's favor, as the Court must at the pleadings stage, the Court should conclude the relevant *Ellis* factors establish Plaintiff has an ongoing, committed subscriber relationship with MasterClass. *See Mata*, 2024 WL 5161955, at *4 (finding plaintiff sufficiently alleged he was a subscriber based on allegations nearly identical to Plaintiff's allegations concerning her registration for an account on the MasterClass website).

**Registration.** Defendant does not dispute that Plaintiff registered for MasterClass website's using her Facebook credentials. Mot. at 16 (conceding that Plaintiff satisfied "registration").

**Payment.** Defendant's emphasis on Plaintiff's free subscription (as opposed to paid) is a red herring and misplaced. The Court should reject MasterClass's argument because it ignores that all Circuits to address this question agree that "someone doesn't have to spend money to be a VPPA 'subscriber.'" *Salazar*, 118 F.4th at 551 (agreeing "with both the Eleventh and First Circuits that someone doesn't have to spend money to be a VPPA 'subscriber.' Otherwise, the term 'subscriber' would be rendered superfluous by the terms 'purchaser' and 'renter' in the definition of consumer'"). *Salazar* was informed by prior decisions of the First and Eleventh Circuits which found the provision of personal information to be a form of "payment." *Id.* at 552–53 (finding that plaintiff who provided his email address, IP address, and cookies associated with his device was a

subscriber) (citing *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016) (reasoning that although the plaintiff paid no money for defendant's content, he still provided commitment and consideration in the form of access to his personal information (his Android ID and mobile device's GPS location), which created a subscriber relationship); *Ellis*, 803 F.3d at 1257 (finding no subscriber relationship where plaintiff "did not provide any personal information to Cartoon Network")).[1]

Moreover, as the Second Circuit explained, the personal information Plaintiff allegedly supplied to MasterClass "is not insignificant." *Salazar*, 118 F.4th at 552. "By receiving it," MasterClass "learned how to directly reach out to [Plaintiff]. It discovered where h[er] device was. It gained access to additional information stored in any cookies on h[er] device." *Id.* As they did for NBA.com, "[t]hese tools increased [MasterClass's] potential to urge [Plaintiff] to visit [MasterClass].com and watch videos on it, making [MasterClass's] relationship with h[er] distinct from its relationship with casual MasterClass.com video-watchers who had not signed up" for the website. *Id.* Assessing these allegations under liberal the motion to dismiss standard, the Court should conclude Plaintiff's conveyance of her personal information to Defendant while registering is sufficiently similar to a "payment" to establish a subscriber relationship. *Id.*

**Commitment**. "Although [plaintiff] did not pay money for [her] account, [s]he shared [her] personal information, including [her] email address and Facebook ID." *Mata*, 2024 WL 5161955, at *4. As in *Mata*, Plaintiff registered for MasterClass's website and created an account. Access, therefore, was "not free of … commitment"; "consideration [came] in the form of [personal] information, which was of value to [Plaintiff]." *Id*. (citing *Yershov*, 820 F.3d at 487). This distinguishes Plaintiff's relationship with MasterClass from "one of millions of sites on the web that [Plaintiff] might have accessed through a web browser." *Id*.

[1] Defendant cites to *Ellis* for the preposition that downloading an app and viewing free video content is insufficient to become a subscriber (Mot. at 14), but that case is inapposite because there, as Defendant noted, the plaintiff did not provide Cartoon Network with *any* personal information. 803 F.3d at 1257. Further, in *Ellis*, unlike here, the plaintiff "did not sign up for or establish an account with" the defendant at all. In contrast, here, Plaintiff *did* sign up for and establish a MasterClass account with Defendant, and *did* provide Defendant with her personal information.

**Access to Restricted Content**. Defendant relies on an erroneous line of district court decisions pre-dating *Salazar* to argue that Plaintiff is not a "consumer" because her subscription to MasterClass's website did not provide her "with any enhanced or exclusive access to MasterClass's visual good or services." *See Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945-WLH-AGR, 2024 WL 5323420, (C.D. Cal. June 24, 2024) (relying on *Carter*, which *Salazar* overruled); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) (same); *Gardner v. MeTV*, No. 22 CV 5963, 2024 WL 779728, at *3-4 (N.D. Ill. Feb. 15, 2024) (same); *Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *6 (D.N.J. May 22, 2024) (same). As thoroughly explained above, following *Salazar*, the Court should not find this factor to be dispositive of a subscriber relationship.[2]

**Delivery**. A "video tape service provider" is "engaged in the business … of … *delivery* of … similar audiovisual materials." *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (quoting 18 U.S.C. § 2710(a)(4)) (emphasis added). Defendant does not dispute it is a video tape service provider. Thus, under the VPPA's plain language, this factor is satisfied.

Taken together as a whole, the Court should find that the *Ellis* factors weigh in favor of finding Plaintiff sufficiently alleges subscriber status, as many courts in this district have found based on similar allegations. *See, e.g., M. K. v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 4937287, at *5–6 (N.D. Cal. Aug. 1, 2023) (finding court could reasonably infer a subscriber relationship where plaintiff alleged he was a Google account-holder, and watched videos while logged into his Google account, despite "plead[ing] few details about that account-holder relationship"); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023) (finding sufficient plaintiff's allegations that she "created a Fandom account;

[2] Notably, in *Kuzenski v. Uproxx LLC*, the court refused to create a bright-line, categorial rule requiring that a subscription must provide access to exclusive video content not otherwise available to the public. No. 2:23-CV-00945-WLH-AGR, 2023 WL 8251590, *5 fn.3 (C.D. Cal. Nov. 27, 2023). Instead, it is just one factor to consider and "it is not dispositive or outcome determinative on its own."

became a registered user; provided Fandom with her PII, including her name and email address; and then used Fandom to watch videos"); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721–22 (N.D. Cal. 2023) (finding plaintiff sufficiently alleged subscriber relationship where he provided defendant with his name and email address); *In re Hulu Priv. Litig.* ("*Hulu I*"), No. C 11-03764 LB, 2012 WL 3282960, at *7 (N.D. Cal. Aug. 10, 2012) (finding sufficient plaintiffs' allegations that "they signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services"). As in these cases, the Court should conclude Plaintiff sufficiently alleges she is a consumer under the VPPA.

## II. THE FAC SUFFICIENTLY ALLEGES MASTERCLASS KNOWINGLY DISCLOSED PLAINTIFF'S PERSONALLY IDENTIFIABLE INFORMATION.

MasterClass asserts that Plaintiff does not sufficiently allege it knowingly disclosed information that constitutes PII under the VPPA. Mot. at 17–21. The Court should reject these arguments because, as many courts have already concluded when analyzing similar allegations, the Complaint show that the information MasterClass transmitted to Facebook constitutes PII and that MasterClass knowingly transmitted the PII by making a conscious decision to affirmatively program the Pixel onto its website. Both of these arguments have been squarely rejected by courts within this district as a "factual dispute better suited to summary judgment or trial than a motion to dismiss." *Sellers v. Bleacher Rpt., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *5 (N.D. Cal. July 28, 2023) (rejecting arguments that: (i) Facebook disclosed the PII to Facebook, rather than Bleacher Report; and (ii) and that scienter was not well-plead); *Fan v. NBA Props. Inc.*, No. 23-cv-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (same).

### A. The FAC Explains How MasterClass Disclosed Information that Would Allow an Ordinary Person to Identify Her.

Plaintiff alleges MasterClass disclosed her PII by using the Pixel it installed on its website to collect her FID and Video Media and transmit this information to Meta. FAC ¶¶ 4–5, 32–33. MasterClass challenges whether the FID allows an "ordinary person" to identify her and thus, be considered PII under the VPPA; and it also claims that since Meta created the FID cookie and then transmitted it, MasterClass did not disclose it. Mot. at 19–21. Not only are these assertions contrary

to the Complaint, outside the pleadings, and inappropriate to consider on a motion to dismiss, but also Courts have consistently held that the FID *is* PII.

Under the VPPA, PII is not limited to any specific type of information. Instead, PII is functionally defined to include any information that can be used by "an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 984; *In re Hulu Privacy Litig. ("Hulu II")*, 2014 WL 1724344, at *11 (N.D. Cal. Apr. 28, 2014) ("It does not require identification by a name necessarily."). In *Eichenberger*, the court held that a device serial number does not constitute PII because it could not identify an individual unless it was combined with other information in the possession of a third party; consequently, "an ordinary person could not use the information that Defendant allegedly disclosed to identify an individual." 876 F.3d at 986. Unlike a device serial number, the allegations here plausibly establish that the information MasterClass disclosed to Meta would allow someone to identify Plaintiff because the FID is unique to a specific individual, tied to his personal Facebook profile, and does not require that an ordinary person know any other information to identify Plaintiff. FAC ¶¶ 5, 34, 36.

Every Facebook user is assigned a unique FID that is linked to the individual's Facebook profile and name. *Id*. ¶¶ 5,34. The FID is unlike anonymous device identification numbers or IP addresses that require additional information to identify a user. *See Sellers*, 2023 WL 4850180 at *4 ("The [Facebook ID] is a unique identifier that is enough, on its own, to identify a person."); *Czarnionka v. Epoch Times Ass'n, Inc.* ("*Czarnionka II*"), 2022 WL 17718689, at *1 (S.D.N.Y. Dec. 15, 2022) (explaining that unlike "anonymized device serial numbers or IP addresses, which must be combined with other information to identify individuals," the FID allows an ordinary person to identify someone by simply typing it into an internet address). Anyone who possesses an FID can use it to "quickly and easily locate, access, and view the corresponding Facebook profile" without anything more. FAC ¶ 5. Here, equipped with only the FID, any "ordinary person" can easily identify any individual on Facebook "by simply typing 'facebook.com/[Facebook ID]' into a web browser." *See Czarnionka II*, 2022 WL 17718689, at *1; FAC ¶¶ 34, 36. Thus, anyone with an FID can easily identify a person's corresponding Facebook profile revealing the user's

"real name, photograph, and other personally identifying information." *See* FAC at ¶¶ 5, 34 fn.3 (describing Facebook's Real Name Policy); *see Fandom, Inc.*, 2023 WL 4670285, at *4 (finding PII plausibly alleged where a plaintiff claimed that a user's Facebook profile may contain, among other things, "the user's name" and "photos").

Applying the "ordinary person" test the Ninth Circuit adopted in *Eichenberger*, a court in this district held in another VPPA case that the FID constitutes PII. *See Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2022 WL 7652166, at *7 (N.D. Cal. Oct. 13, 2022) (Spero, J.). Judge Spero observed that, under Ninth Circuit precedent, "a 'Facebook link or an email address may very well readily enable an "ordinary person" to identify an individual.'" *Id*. (quoting *Eichenberger*, 876 F.3d at 986). Applying this law, Judge Spero concluded that the plaintiff's allegation that anyone with a person's FID can quickly and easily locate and access their Facebook profile, "which in turn can reveal a user's name or other personal information," was "sufficient to proceed." *Id*. at *8; *see also Sellers*, 2023 WL 4850180, at *5. Plaintiff's Complaint makes similar allegations. FAC ¶ 5 ("Facebook—or any other ordinary person—can use [an FID] to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile.").

*Stark* accords with decision of many other courts holding that the FID qualifies as PII. *See, e.g., Ghanaat*, 689 F. Supp. 3d at 721–22 ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII.") (collecting cases); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. Mar. 7, 2023) (stating "most district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions") (collecting cases); *Lebakken v. WebMD LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) ("the Court finds that [plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII"); *Belozerov v. Gannett Co.*, 2022 WL 17832185, at *4 (D. Mass. Dec. 20, 2022) ("A Facebook ID is a unique identifier that allows anyone to discover the user's identity. Furthermore, courts in other circuits have explicitly held that a Facebook ID constitutes PII."); *Czarnionka II*, 2022 WL 17718689, at

*1 (finding under the "ordinary person" standard defendant's disclosure of plaintiff's FID constituted PII).

MasterClass attempts to skirt liability by misconstruing Plaintiffs' theory of PII disclosure and asserting that "the transmission of her Facebook ID [was] from her own browser to Facebook." Mot. at 17. This argument is meritless because Plaintiff alleges throughout the Complaint that MasterClass *itself* disclosed subscriber PII by choosing to install and configure the Pixel on its website. FAC ¶¶ 4, 32. Thus, not only is this assertion contrary to the Complaint, but it is not amenable to a resolution on a motion to dismiss. *See, e.g.*, *NBA Props. Inc.*, 2024 WL 1297643, at *2; *Czarnionka I*, 2022 WL 17069810, at *3.

In *Czarnionka I*, for example, the defendant argued, as MasterClass does here, that it did not disclose any PII "because the Pixel is placed into a user's web browser by Facebook and sends information from the user's web browser directly to Facebook, independent of any action by Defendant itself." *Id*. The court rejected the defendant's argument based on the plaintiff's allegations establishing that "[b]y installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within." *Id*. Other decisions are in accord. *See, e.g.*, *NBA Props. Inc.*, 2024 WL 1297643, at *2 (finding "defendants' argument that the personal information was disclosed by [plaintiff's] browser and not the [defendants'] website raises factual questions not suitable for resolution on a motion to dismiss."); *Sellers*, 2023 WL 4850180, at *5 (rejecting argument that Facebook rather than defendant places c_user cookie on user's web browser as premature at motion to dismiss stage); *Belozerov*, 2022 WL 17832185, at *4 ("Gannett contradicts the alleged facts, contending that Facebook, not defendant, placed the tracking pixel on the USA Today website. Such a factual dispute cannot be resolved on a motion to dismiss at which stage the Court must treat all non-conclusory factual allegations in the complaint as true."); *see also, e.g.*, *Goldstein, et al. v. Fandango Media, LLC*, Case No. 9:22-cv-80569-KAM (S.D. Fla. Mar. 7, 2023), ECF No. 57 (finding a question of fact as to which entity is responsible for placing the Facebook cookie on the website that leads to PII being disclosed is not appropriate for resolution at the pleadings stage).

In summary, the FAC alleges Plaintiff intentionally and knowingly installed the Pixel on MasterClass.com so that its subscribers' Personal Viewing Information would be transmitted to Meta, and that MasterClass derived financial benefits from this decision. This is, in effect, the same as "a store clerk handing a list of videos Judge Bork rented to a reporter." Mot. at 19. As in all the foregoing cases, the Court should conclude that, at this stage, Plaintiff has alleged sufficient facts to plausibly allege that MasterClass transmitted PII through its use of the Pixel.

### B. The Complaint Sufficiently Alleges that MasterClass's "Knowingly" Made Disclosures of Personally Identifiable Information to Meta.

A video tape service provider is liable under the VPPA if it "knowingly discloses" a consumer's PII to a third party. *See* 18 U.S.C. § 2710(b)(1). A defendant discloses PII "knowingly" when it possesses "consciousness of transmitting the private information." *Hulu II*, 2014 WL 1724344, at *15. Rule 9 provides that knowledge may be alleged generally. *Simi Mgmt. Corp. v. Bank of Am. Corp.*, 2012 WL 1997232, at *6 (N.D. Cal. June 4, 2012).

Notably, MasterClass does not deny its installation of the Pixel on its website. However, in yet another improper attempt to dismiss the Complaint based on facts that are outside the pleadings, Defendant challenges Plaintiff's allegations that MasterClass knew it was disclosing information about its subscribers. Mot. at 20.

This factual dispute is improper for resolution at the pleadings stage. *See NBA Props. Inc.*, 2024 WL 1297643, at *2 (finding defendant's arguments that plaintiff failed to plead the disclosure was made knowingly raised "factual questions that should be decided on a full factual record"); *Belozerov*, 2022 WL 17832185, at *4 (finding defendant's argument that it did not know it was transmitting user info to Meta was "contradicted by the complaint"). Further, this argument ignores the fact that MasterClass—not Meta—deliberately installed the Facebook pixel (a software tool that tracks and gathers user information, including FIDs) on the website it owned and operated. FAC ¶¶ 4, 41. Courts in this district have found similar allegations that a company who integrated the pixel throughout its website to collect and transmit PII sufficient to state a plausible claim for a violation of the VPPA. *Thornton v. Mindvalley, Inc.*, 2025 WL 877714, at

*4 (N.D. Cal. Feb. 14, 2025); *NBA Props. Inc.*, 2024 WL 1297643, at *2; *Sellers*, 2023 WL 4850180 at *5.

As to motive, Plaintiff alleges Defendant installed the Facebook pixel on its website to profit from the transmission of users' PII by building more targeted advertising, which in turn, generates greater revenue. FAC ¶¶ 6, 41–42, 46. This is sufficient to satisfy the VPPA's knowledge element. *See NBA Props. Inc.*, 2024 WL 1297643, at *2 (finding the court could reasonably infer defendant knowingly disclosed PII from allegations that defendant chose to install the pixel to "enhance their 'advertising campaigns'" and "used that data to build audiences on Meta" for targeted advertising"); *Sellers*, 2023 WL 4850180 at *5 (finding allegations that defendant "deliberately installed the Facebook pixel on its website" and did so "to improve its targeted advertising and increase its revenue" sufficient to reasonably infer that defendant knowingly disclosed PII); *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *3 (D.R.I. Sept. 12, 2022). ("Given the facts alleged, it can reasonably be inferred that [Defendant] knowingly transmits PII for the purpose of targeted advertising."). At this juncture, "no more precise knowledge is required under the statute." *Harris*, 2023 WL 2583118, at *7. Indeed, other courts interpreting the knowledge element of VPPA have upheld similar allegations. *See, e.g., Stark*, 2022 WL 7652166, at *7; *Lebakken*, 640 F. Supp. 3d at 1343; *Czarnionka I*, 2022 WL 17069810, at * 4; *Belozerov*, 2022 WL 17832185 at *4; *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022).

Finally, the FAC alleges that MasterClass knew that it was disclosing information concerning its subscribers. A reasonable inference to be drawn from the allegations of the FAC is that MasterClass knows the identity of the individuals who register for an account on their website. FAC ¶¶ 21–24, 38. And MasterClass knows that anyone who watches a prerecorded video on their website will have their Personal Viewing Information transmitted to Facebook without their consent. FAC ¶¶ 32–33. Putting these allegations together, the FAC plausibly alleges that MasterClass had actual knowledge that it was disclosing information concerning its

subscribers to Facebook. *See NBA Props. Inc.*, 2024 WL 1297643, at *2; *Sellers*, 2023 WL 4850180 at *5; *Belozerov*, 2022 WL 17832185, at *4.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. If the Court grants any part of Defendant's Motion, Plaintiff respectfully requests leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

DATED this 27th day of March, 2025

**EDELSBERG LAW, P.A.**

By: */s/ Scott Edelsberg*

Scott Edelsberg, (CA Bar # 330090)
scott@edelsberglaw.com
Adam A. Schwartzbaum (FL Bar No. #93014) (*pro hac vice* pending)
adam@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

*Attorneys for Plaintiff and the Proposed Class*

ADDITIONAL PLAINTIFF'S COUNSEL

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Edwin E. Elliott
ashamis@shamisgentile.com
edwine@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th of March 2025, I filed a copy of the foregoing with the Clerk of Court via the Court's electronic filing system, which will send notice of electronic filing to all counsel of record.

*/s/ Scott A. Edelsberg*
Scott Edelsberg, Esq.