Sheri Pan (SBN 316136)
sheri@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335

Benjamin S. Thomassen (*pro hac vice*)
ben.thomassen@zwillgen.com
ZWILLGEN PLLC
One North LaSalle St., Suite 4600
Chicago, IL 60602
Main: (312) 685-2278

Attorneys for Defendant
**YANKA INDUSTRIES, INC. d/b/a MASTERCLASS**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBEKKA LIEN,<br><br>*Plaintiff*,<br><br>v.<br><br>YANKA INDUSTRIES, INC. d/b/a MASTERCLASS,<br><br>*Defendant.* | Case No. 3:24-cv-08007-TLT<br><br>**DEFENDANT YANKA INDUSTRIES, INC. d/b/a MASTERCLASS'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge: Hon. Trina L. Thompson<br>Hearing Date: May 13, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 3

A. Plaintiff's Interpretation of the VPPA's "Consumer" Element Fails to Provide a Contextual Analysis and Should Not Be Followed. ................................ 3

1. The Sixth Circuit's analysis of Section 2710(a)(1) provides a sound, contextual interpretation of the VPPA and demonstrates the flaws in Plaintiff's arguments. ........................................................... 3

2. The VPPA's drafting history confirms that Congress intended Section 2710(a)(1) to apply to *video* goods or services. .............................. 8

B. Plaintiff Does Not Show She Had Any "Durable" Subscriber Relationship With MasterClass. ..................................................................................... 9

C. The FAC Does Not Plausibly Allege a "Knowing" Disclosure. ........................... 12

III. CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)....................6

*City & Cnty. of San Francisco v. EPA*, ––– U.S. ––––, 145 S. Ct. 704 (2025)....................5

*Czarnionka v. Epoch Times Ass'n*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)....................13

*Doe v. Chao*, 540 U.S. 614 (2004)....................8

*Dubin v. United States*, 143 S. Ct. 1557 (2023)....................4

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir.2017)....................12, 14

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015)....................2, 9, 10, 11, 12

*Gardner v. Me-TV National Ltd. P'ship*, No. 24-1290, 2025 WL 942835 (7th Cir. Mar. 28, 2025)....................4

*Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023)....................12

*Heather v. Healthline Media, Inc.*, No. 3:22-CV-05059-JD, 2023 WL 8788760 (N.D. Cal. Dec. 19, 2023)....................5, 6, 8

*Hernandez v. Container Store, Inc.*, No. 2:23-CV-05067-HDV-RAO, 2024 WL 72657 (C.D. Cal. Jan. 3, 2024)....................3

*Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435 (2019)....................4

*Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228 (S.D. Cal. 2023)....................5, 8

*In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................13

*In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)....................12

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 8

*Jackson v. Fandom, Inc.*,
No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 12

*King v. Burwell*,
576 U.S. 473 (2015) ........ 5

*Kuzenski v. Uproxx LLC*,
No. 2:23-cv-00945-WLH-AGR, 2024 WL 5323420 (C.D. Cal. June 24, 2024) ........ 10, 11, 12

*M. K. v. Google LLC*,
No. 21-CV-08465-VKD, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ........ 11-12

*Mata v. Zillow Group Inc.*,
No. 24-cv-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 7, 8, 10

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
583 U.S. 366 (2018) ........ 5

*Rudisill v. McDonough*,
601 U.S. 294 (2024) ........ 5-6

*Salazar v. National Basketball Association ("Salazar I")*,
118 F.4th 533 (2d Cir. 2024) ........ *passim*

*Salazar v. Paramount Global ("Salazar II")*,
No. 23-5748, 2025 WL 1000139 (6th Cir. Apr. 3, 2025) ........ *passim*

*Sellers v. Bleacher Rep., Inc.*,
No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ........ 13

*Shapiro v. Peacock TV*,
No. 23-CV-6345 (KMK), 2025 WL 968519 (S.D.N.Y. Mar. 31, 2025) ........ 7

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ........ 8

*Sutton v. TED Found., Inc.*,
No. 23 CIV. 9219 (DEH), 2024 WL 4167342 (S.D.N.Y. Sept. 12, 2024) ........ 9, 10, 11, 12

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ........ 4

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023) ........ 3, 7, 8

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........ 10

*Yoder v. Ingersoll-Rand Co.*,
31 F. Supp. 2d 565 (N.D. Ohio 1997) ....................................................................14

**Statutes**

18 U.S.C. § 2710(a)(1) .......................................................................................*passim*

18 U.S.C. § 2710(a)(3) ........................................................................................6, 12

18 U.S.C. § 2710(a)(4) .....................................................................................4, 5, 11

18 U.S.C. § 2710(b)...............................................................................................6, 7

Pub. L. No. 100-618, 102 Stat. 3195 (Nov. 5, 1988).................................................9

**Other Authorities**

134 Cong. Rec. S5397-01 (May 10, 1988)...............................................................8

S. Rep. No. 100-599 (1988)...............................................................................7, 8, 9

## I. INTRODUCTION

Before addressing Plaintiff Rebekka Lien's legal arguments in her opposition, (dkt. 34 (the "Opposition")), it's important to address what the parties agree this case is *factually* about. As Defendant Yanka Industries, Inc. d/b/a MasterClass explained in its motion to dismiss, (dkt. 29 (the "Motion")), Plaintiff's first amended complaint, (dkt. 10 (the "FAC")), discusses two categories of MasterClass subscribers: (i) those that *pay* for a subscription and receive access to MasterClass's exclusive "prerecorded video tutorials and lectures by experts in various fields," (*id.* ¶¶ 14, 27) and (ii) those who do not pay but have used their Facebook credentials to "register" for the website, (*id.* ¶ 24). While the FAC tries to muddy the distinction between these groups, the Opposition *does make clear* that as a free registrant, Plaintiff did *not* receive any exclusive MasterClass benefits. Further the Opposition confirms that Plaintiff did not access anything other than the free video content on MasterClass's website, which is equally accessible to anyone with internet access. (*See* Mot. at 4.) Accordingly, when Plaintiff says, "she has used her MasterClass.com subscription to request, obtain, and view prerecorded video media through the website and/or app while logged into her Facebook account," (Opp'n at 4), it follows that she is referring only to "free prerecorded video content" on the MasterClass website. (the "Website"), (FAC ¶ 14).[1] Plaintiff raises no disputes with this factual issue. Now that we have level set the facts, Plaintiff's arguments opposing our Motion go nowhere.

First, on the threshold "consumer" issue, Plaintiff argues that the Second Circuit's analysis in *Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024) ("*Salazar*") has negated the consensus interpretation of Section 2710(a)(1) that requires a factual nexus between a VPPA "consumer" and the *video* goods or services offered by a covered business. *Petition for Cert. filed*, No. 24-994 (Mar. 18, 2025). Recent appellate case law on this issue shows that Plaintiff wrong. In *Salazar v. Paramount Global*, No. 23-5748, 2025 WL 1000139 (6th Cir. Apr. 3, 2025) ("*Salazar II*"), the Sixth Circuit rejected the Second Circuit's statutory analysis and agreed – like more than two

[1] MasterClass again notes that only Plaintiff's *website* – not app – interactions are relevant here, because the Facebook Pixel is a *website* (not an app) tool. (Mot. at n.1.) But because Plaintiff still references her "app" interactions in the Opposition, MasterClass again incorporates all the arguments made herein as applicable to Plaintiff's allegations about both the website and the MasterClass app.

dozen district court decisions, including many from this District, have done – that the VPPA's definition of "consumer" requires that a plaintiff rent, purchase, or subscribe to a defendant's *video* goods or services. As *Salazar II* explains, "[t]he pure definitional meaning of words in isolation shouldn't be confused with the plain meaning of the [VPPA's statutory] text." *Id.* at *6 (citation omitted). If this Court joins this consensus interpretation of the VPPA—as it should—Plaintiff's position fails and her claim should be dismissed.

Second, Plaintiff contends that her free "registration" with the Website is enough to form a durable relationship with MasterClass and, in turn, shows she is a "subscriber." But while she agrees that the factors addressed in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) should control the outcome here, she only shows that, at most, *two* factors – "registration" and "payment" – are present. (*See* Opp'n at 12-13.) As the cases identified in the Motion show, two factors are not enough to evidence any meaningful relationship between Plaintiff and MasterClass. Simply registering for the Website does not pass muster here, especially when Plaintiff does not allege that there is any commitment between herself and MasterClass; that MasterClass delivered anything tangible to her; that there is any "expressed association" with the Website; or that her registration provided her with access to any restricted content. A VPPA claim cannot survive under the facts offered in the FAC.

Finally, the FAC does not adequately allege that MasterClass "knowingly" disclosed her Facebook ID to Meta, or that MasterClass "knew" that any alleged disclosures concerned one of its subscribers. On the first point, Plaintiff *explicitly* alleges that her Facebook ID was disclosed by *her* browser – not MasterClass. (FAC ¶ 13.) As such, the cases she relies on (where defendants generally asked the court to *infer* a browser-based disclosure) are inapposite. On the second point, Plaintiff asks the Court to "infer" MasterClass's knowledge but she does not provide support for the inference she seeks. (Opp'n at 20.) Caselaw is clear that merely alleging that disclosures occurred is not sufficient to survive a motion to dismiss. Plaintiff's failure to allege a *knowing* disclosure is fatal to her claim.

For the aforementioned reasons, this Court should grant our motion and dismiss Plaintiff's VPPA claim.

## II. ARGUMENT

### B. Plaintiff's Interpretation of the VPPA's "Consumer" Element Fails to Provide a Contextual Analysis and Should Not Be Followed.

In response to the interpretation issue at the heart of this case, Plaintiff contends that MasterClass relies "entirely on a discredited line of district court cases" and recommends that the Court follow the Second Circuit's analysis in *Salazar I*, which interpreted the phrase "goods or services" in Section 2710(a)(1) as referring to *any* goods and services – not just audiovisual ones. (Opp'n at 5-6.) That approach should be rejected. As introduced above, the Sixth Circuit's decision in *Salazar II* provides a better interpretative account of the statute; is consistent with the majority of other federal decisions to address this issue; and accounts for each of the arguments raised in the Opposition. And to the extent that the now-competing appellate decisions on this issue are evidence of statutory ambiguity, the VPPA's legislative history shows that Congress intended the VPPA's definition of "consumer" to apply only to individuals that rent, purchase, or subscribe to a defendant's *video* goods or services.

#### 1. The Sixth Circuit's analysis of Section 2710(a)(1) provides a sound, contextual interpretation of the VPPA and demonstrates the flaws in Plaintiff's arguments.

As MasterClass's Motion explained, a "litany of decisions" have interpreted the VPPA to apply only to consumers of *audiovisual* materials, rather than any products or services offered by a defendant. (Mot. at 7 (quoting *Hernandez v. Container Store, Inc.,* No. 2:23-CV-05067-HDV-RAO, 2024 WL 72657, at *3 (C.D. Cal. Jan. 3, 2024).) Those decisions have relied on a contextual reading of Section 2710(a)(1) and have held that to state a claim a plaintiff must allege a "factual nexus or relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content." (*Id.* (quoting *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023).) Far from being "discredited," as Plaintiff contends, (Opp'n at 6), this consensus interpretation of the VPPA was endorsed recently by the Sixth Circuit in *Salazar II* and used to affirm dismissal of an analogous VPPA claim. 2025 WL 1000139, at *7. The decision also explains why each of Plaintiff's arguments – all of which rely on *Salazar I* – fail.

**First**, Plaintiff contends that *Salazar I* applied an appropriately "contextual approach to statutory interpretation" that is "truer to the plain meaning of the statutory text" as compared to the numerous cases identified in MasterClass's Motion. (Opp'n at 6-7.) But as *Salazar II* explains, the Second Circuit's analysis—like the cursory analysis in *Gardner v. Me-TV National Ltd. Partnership*, No. 24-1290, 2025 WL 942835, at *3 (7th Cir. Mar. 28, 2025)[2]—errs by construing Section 2710(a)(1)'s reference to "goods or services" in a decidedly *non*-contextual way. *Salazar II*, 2025 WL 1000139, at *5 (quoting *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("The statutory phrase 'goods or services' 'cannot be construed in a vacuum' to wall it off from the meaning imputed by the rest of the statute's text.")). To that end, *Salazar II* provides an affirmative account of the VPPA that – like the cases discussed in the Motion – harmonizes and accounts for the VPPA's various definitional sections:

> Here, there is an association between the terms "goods or services" and "audio visual materials." So viewing the provision as a whole reveals "a more targeted reading" than the one Salazar proposes. *See Dubin*, 143 S. Ct. at 1565. Even though—standing alone—the expression "goods or services" is not limited, its association with surrounding words cabins its meaning. The full definition of "consumer" in the statute does *not* encompass consumers of all "goods or services" imaginable, but only those "from a video tape service provider." 18 U.S.C. § 2710(a)(1). This proviso tethers the definition of "consumer" to that of "video tape service provider." And that definition pinpoints the relevant "goods or services": those involved in the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). So the most natural reading, which accounts for the context of both definitions, shows that a person is a "consumer" only when he subscribes to "goods or services" in the nature of "video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(1), (a)(4)[.] Together, "text and context point to the same place:" the expression "goods or services" is limited to audiovisual ones. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022).

*Id.* (emphasis in original) (footnote omitted).

---

[2] Plaintiff filed a notice of supplemental authority drawing the Court's attention to both *Gardner* and *Salazar II*, noting that more "appellate judges" agree with them. (Dkt. 39.) While head-counting doesn't change the fact that there is now a circuit split on the "consumer" issue – with several more circuits, including the Ninth Circuit, poised to weigh in – Plaintiff of course misses that the total number of federal judges that align with the Sixth Circuit would fill a medium-sized conference room. (*See*, *e.g.*, Mot. at 7 n.4.) There is a clear "majority view" on this issue, and it does not favor Plaintiff.

In comparison, the approach taken by *Salazar I* looks primarily at the literal text of Section 2710(a)(1) and fails to account for many features of the VPPA evidencing the statute's "'broader statutory scheme,' which focuses on privacy protections for records of transactions related to audio-visual goods and services." *Salazar II*, 2025 WL 1000139, at *6 (quoting *City & Cnty. of San Francisco v. EPA*, —— U.S. ——, 145 S. Ct. 704, 717 (2025)). Indeed, neither Plaintiff nor *Salazar I* convincingly account for the various statutory features identified in the Motion, including (i) the consistent use of the terms "services" through the VPPA's definitional sections, *Heather v. Healthline Media, Inc.*, No. 3:22-CV-05059-JD, 2023 WL 8788760, at *2 (N.D. Cal. Dec. 19, 2023); (ii) the parallelism between Sections 2710(a)(1) and (a)(4), which refer to "renter, purchaser, or subscriber" and "rental, sale, or delivery," respectively, *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1233 (S.D. Cal. 2023); and (iii) the fact that Section 2710(a)(1) refers in the first instance to "renters," which has a clear connection to *video* rentals, (Mot. at 9). By shrugging off these statutory features and focusing instead on the "isolate[d] meaning of 'goods and services,'" Plaintiff falls into the trap of construing the VPPA's individual provisions over and above the statute as a whole. *Salazar II*, 2025 WL 1000139, at *5-6 (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)).

**Second**, and again citing *Salazar I*, Plaintiff asserts two arguments that the title of the VPPA's liability provision—which addresses "Video Tape Rental and Sale Records"—has nothing to say about the definition of the term "consumer." (Opp'n at 9 (discussing *Salazar I*, 118 F.4th at 547).) Initially, she argues that "titles in statutes 'cannot limit the plain meaning of the text.'" (*Id.* (quoting *Salazar I*, 118 F.4th at 548).) That proposition is true in principle, but, here, MasterClass does not ask for a *limiting* reading. *See Salazar II*, 2025 WL 1000139, at *6 (interpreting Section 2710(a)(1) as addressing video goods or services does not "add[] an unexpressed limitation to the text"). Rather—and as the Sixth Circuit did in *Salazar II*—MasterClass advocates for a contextual reading that considers the VPPA as a whole. (Mot. at 10.) As the Supreme Court has stated, consideration of a statute's titles and headings can help in that analysis. *Rudisill v. McDonough*, 601 U.S. 294, 309 (2024) (quoting *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018)) (engaging

in plain text analysis and noting that "section headings ... 'supply cues' as to what Congress intended").

Next, Plaintiff contends that Section 2710(b)(1)'s title has no bearing on the statutory definition of "consumer" because, according to *Salazar I*, "it's the definition of 'personally identifiable information' that limits what can be shared[.]" (Opp'n at 9 (quoting *Salazar I*, 118 F.4th at 548).) There are multiple issues with that argument. First, it ignores that Section 2710(b)'s title and the definitions of "consumer" and "video tape service provider" use consistent language—i.e., "rental/renter" and "sale/purchaser." As Judge Donato held in *Heather*, a "principles of statutory construction *require* defining [these identical terms] consistently within the statutory context." 2023 WL 8788760, at *2 (emphasis added). Second, the VPPA's definition of "PII" cannot be read as the statute's limiting principle. As *Salazar II* notes, Section 2710(a)(3) uses the open-ended word "includes" – a term that is illustrative, not exhaustive. 2025 WL 1000139, at *6. That contrasts with Sections 2710(a)(1) and (a)(4), both of which use the word "means" and, in turn, limit who can sue (consumers of video materials) and what entities are covered (providers of video materials). *Id.* (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) ("[W]hen a 'definition is introduced with the verb "includes" instead of "means" ... it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive.'")).

**Third**, Plaintiff argues that the phrase "from a video tape service provider" does not affect the scope of the "goods or services" referenced in Section 2710(a)(1) because a "video tape service provider" needn't deal exclusively in video products or services. (Opp'n at 9-10.) Plaintiff's argument again ignores the VPPA's broader statutory scheme. Consistent with Section 2710(b)(1)'s title, the VPPA "focuses on privacy protections for records of *transactions related to audio-visual goods and services*." *Salazar II*, 2025 WL 1000139, at *6 (emphasis added). As one district court recently observed, Congress stated that focus explicitly in the same Senate Report that the Second Circuit relies upon in *Salazar I*:

> The definition of personally identifiable information includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill. For example, a department store that sells video tapes would be required to extend

> privacy protection to only those transactions involving the purchase of video tapes and not other products.

*Shapiro v. Peacock TV*, No. 23-CV-6345 (KMK), 2025 WL 968519, at *9 (S.D.N.Y. Mar. 31, 2025) (quoting *Salazar I*, 118 F.4th at 549, n.10). The VPPA defines consumers in relation to the goods or services they rent, buy, or subscribe to, 18 U.S.C. § 2710(a)(1), and the Act only provides rights with respect to consumers' video tape rental and sales records, *id.* § 2710(b). As the Senate Report explains, when a consumer makes a "transaction[] involving the *purchase of video tapes*" she comes within the Act's scope as a "consumer;" if she purchases an "other product," she does not. S. Rep. No. 100-599, at 12 (1988) (emphasis added). As *Salazar II* also explains, this focus shows that in Section 2710(a)(1) "the terms 'goods or services' are linked to those goods and services provided by a company when it is acting as a 'video tape service provider'—namely 'audio visual materials.'" 2025 WL 1000139, at *6.

**Fourth**, Plaintiff says that "[s]ince [*Salazar I*] was decided, courts have begun to recede from the mistaken line of district court cases [requiring] that a person may only be a consumer under the VPPA if they subscribe to audiovisual goods or services." (Opp'n at 10.) The argument is disingenuous. The Opposition cites only *Mata v. Zillow Group Inc.*, No. 24-cv-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) for that proposition, and then chides MasterClass for arguing that *Mata* endorses the so-called "extratextual" nexus requirement. (*Id.*) But *Mata*'s text belies this pushback. *Mata* cites to *Salazar I* for the proposition that sharing personal information – instead of paying – can help establish a "subscriber" relationship, and notes that "[a]ll Circuits that have addressed [the] question agree [on that point]." *Mata,* 2024 WL 5161955, at *3. But that portion of *Salazar I* is distinct from the question of whether, under Section 2710(a)(1), a VPPA consumer must allege a factual nexus to a defendant's video content. Plaintiff's Opposition emphasizes that the Second Circuit rejected that requirement in *Salazar I*. (Opp'n at 6.) *Mata*, however, treats the requirement as settled law:

> However, "not everything that can conceivably be labeled a 'subscription' automatically triggers the protections of the VPPA." *Tawam*, 684 F.Supp.3d at 1061. **Rather, courts have "required the existence of a factual nexus or relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content."** *Id.* (internal citations omitted).

2024 WL 5161955, at *3 (emphasis added). Indeed, we are not aware of any district court decisions outside of the Second Circuit that have accepted *Salazar I*'s broad "consumer" interpretation – and certainly not any in the Ninth Circuit, where decisions like *Healthline*, *Tawam*, and *Hunthausen* continue to reflect the consensus interpretation of Section 2710(a)(1) that the Sixth Circuit expressly endorsed in *Salazar II*. *Mata*'s direct citation to *Tawam* supports MasterClass on this issue – not Plaintiff.

**2. The VPPA's drafting history confirms that Congress intended Section 2710(a)(1) to apply to *video* goods or services.**

Finally, to the extent that the Second and Sixth Circuits' conflicting interpretations show some ambiguity in the term "consumer," the VPPA's drafting history explains why Section 2710(a)(1) does not explicitly reference video "goods or services." *Cf. Doe v. Chao*, 540 U.S. 614, 622 (2004) (relying on drafting history "showing that Congress cut out" language in statute to find plaintiffs bringing Privacy Act claims had to show actual damages to obtain statutory damages). Referencing this history as a backstop makes sense for the VPPA, given that multiple appellate courts have acknowledged that the VPPA "is not well drafted." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (quoting *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012)).

Earlier drafts of the bill that became the VPPA protected both the video-viewing records held by video tape service providers and the book-borrowing records held by libraries. *See id.* at 284–85; S. Rep. No. 100-599, at 8. In its earlier versions, the bill included parallel provisions defining "librar[ies]" and their "patron[s]," and "video tape service provider[s]" and their "consumers." 134 Cong. Rec. S5397-01 (May 10, 1988) (statement of Sen. Leahy). Those corresponding provisions shared a single provision defining "personally identifiable information," which covered "information which identifies a person as having requested . . . specific materials or services from a video tape service provider or library." *Id.* at S. 2361. In this earlier iteration, then, the term "specific materials or services" referenced in the definition of "personally identifiable information" lined up with both the "services" referenced in the definition of "patron" and the "goods or services" referenced in the definition of "consumer."

As the bill neared passage, Congress cut the library-related portions of the bill. The definitions for "library" and "patron" came out, but the definitions for "video tape service provider" and "consumer" stayed in and remained unchanged. Pub. L. No. 100-618, 102 Stat. 3195 (Nov. 5, 1988). But because the definition of "personally identifiable information" had been shared between the video and library portions of the bill, Congress revised it to make clear that it only applied to the definitions of "video tape service provider" and "consumer" by adding the word "video" before "materials." As the Act's legislative history explains, that was done not to differentiate between the scope of "personally identifiable information" and "consumer," but to "make clear" that the final version of the statute applied to video materials—not a video tape service provider's non video offerings—in the final version of the statute. S. Rep. No. 100-599, at 12.

In sum, the Second Circuit's decision in *Salazar I* represents the minority interpretation of Section 2710(a)(1). The Court should follow the consensus interpretation endorsed by *Salazar II* and the many district court decisions cited in the Motion, which requires dismissal here.

**C. Plaintiff Does Not Show She Had Any "Durable" Subscriber Relationship With MasterClass.**

Independent of the interpretation issue addressed in *Salazar I* and *II*, Plaintiff does not contest MasterClass's position that the Eleventh Circuit's decision in *Ellis* provides an appropriate framework for determining whether she alleges a basic "subscriber" relationship with MasterClass. (Mot. at 14-17.) As *Ellis* explains – and as numerous courts have agreed – a subscription requires "some type of commitment, relationship, or association (financial or otherwise) between a person and an entity" that is "deliberate and durable" and "involve[s] some or most of the following factors: payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Ellis*, 803 F.3d at 1256 (citation omitted and cleaned up).

While Plaintiff generally states that she meets these requirements, (Opp'n at 11), the underlying facts do not support her assertion. MasterClass agreed that Plaintiff alleges she "registered" for the website and acknowledged that the "payment" factor might be satisfied at the pleading stage based on her alleged provision of data (like her email address) to MasterClass. (Mot. at 16, 17 (citing *Sutton v. TED Found., Inc.*, No. 23 CIV. 9219 (DEH), 2024 WL 4167342, at *6

(S.D.N.Y. Sept. 12, 2024).) Plaintiff makes those points too. (Opp'n at 12-13.) But she fails to show that *any* of the other *Ellis* factors are satisfied.

**Commitment.** Plaintiff fails to state that she agreed to anything when "registering" for the MasterClass website. (*See* Mot. at 16.) Nor does she argue that MasterClass made any promises to her. (*Id.*) Plaintiff's position is that she demonstrated commitment to Masterclass when she provided personal information at registration. (Opp'n at 13.) In support, she cites to *Mata*, which itself cites to the First Circuit's decision in *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016). (*Id.* (citing *Mata*, 2024 WL 5161955, at *4).) That reliance is misplaced. In *Yershov*, the plaintiff downloaded the defendant's app, which let users access exclusive media content. 820 F.3d at 484. Each time the plaintiff used the app to watch video content, he was *required* "to provide consideration in the form of [certain personal] information," including his GPS location, which the First Circuit described as a measure of "commitment" to the defendant. *Id.* at 489. In other words, in order to watch anything on the defendant's app, the *Mata* plaintiff had to give something in return.

Here, the facts Plaintiff alleges are more in line with *Kuzenski* and *Sutton*. (Mot. at 15-16 (discussing *Kuzenski v. Uproxx LLC*, No. 2:23-cv-00945-WLH-AGR, 2024 WL 5323420, at *2, *4 (C.D. Cal. June 24, 2024); *Sutton*, 2024 WL 4167342, at *5-6.) Unlike *Yershov*, Plaintiff does not allege she had to "pay" MasterClass in order to access its video content. Instead, and analogous to *Kuzenski* and *Sutton*, she alleges that she provided her personal information to MasterClass on one occasion to "register" for its website. But from that point onwards, she does not dispute that the video content she accessed on the website was the same free content available to every other internet user that visited the site– i.e., it could be accessed *without* registering and providing any personal information at all. Plaintiff could choose to register an account on MasterClass or not, but either way she could "simply watch[] video clips [on MasterClass's website] . . . for free" and without any commitment whatsoever. *Ellis*, 803 F.3d at 1257.

**Access to Restricted Content.** Plaintiff does not meaningfully address this factor at all, much less attempt to argue that her "subscription" gave her access to any enhanced, exclusive, or restricted content on Masterclass's website – video or otherwise. (Opp'n at 14.) That's because it did not.

Instead, she references her arguments regarding whether a VPPA "consumer" must allege she rented, bought, or subscribed to a defendant's video goods or services. (*Id.*) Plaintiff's argument misses the point. Under the framework of *Ellis*, access to restricted content is not itself dispositive of the subscriber analysis (i.e., in contrast to the threshold issue of whether, under Section 2710(a)(1), a VPPA "consumer" must rent, buy, or subscribe to a defendant's video goods or services). As *Kuzenski* explained (and Plaintiff herself agrees, *see* Opp'n at 14 n.2), it is one *factor* weighed along with the others. *Kuzenski*, 2024 WL 5323420, at *2. By admitting that her so-called "subscription" did not provide her access to any restricted content, she concedes, however, that this factor works against her.

**Delivery.** For the delivery element, Plaintiff contends that because MasterClass did not argue it isn't a VTSP, the delivery element is satisfied because Section 2710(a)(4) defines a VTSP as a business engaged in the "rental, sale, or *delivery* of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). The argument is a nonstarter. MasterClass *is* unquestionably a VTSP as to its *paying* subscribers who, unlike Plaintiff, receive access to MasterClass's paid-for video content. As such, MasterClass arguably "delivers" its exclusive video content to those paying subscribers. But Plaintiff does not contend that MasterClass "delivers" anything to her. Instead, she only alleges that she accessed free video content on MasterClass's website. That is not "delivery." *Kuzenski,* 2024 WL 5323420, at *4 ("Posting a video on a website does not, in this Court's view, constitute 'delivery[.]'").

**Expressed Association.** Plaintiff does not address this element at all and, thus, concedes it.

Accordingly, as in both *Kuzenski* and *Sutton*, Plaintiff at most alleges two of the six *Ellis* factors. As both those courts found, that is not enough to allege a "subscription" relationship between herself and MasterClass. *Sutton*, 2024 WL 4167342, at *6 ("Taken together as a whole, the *Ellis* factors considered by the Court weigh against Plaintiffs' asserted subscriber status."); *accord Kuzenski*, 2024 WL 5323420, at *3-4.

Finally, the handful of cases Plaintiff cites at the end of her *Ellis* argument do not help her cause either. *M. K. v. Google LLC* – Plaintiff's leading case, (Opp'n at 14) – works *against* Plaintiff because, there, the court found that the plaintiff *had to* create a Google account to watch the at-issue

videos, which allowed the court to infer "that [the plaintiff] did not merely view videos while surfing the web." No. 21-CV-08465-VKD, 2023 WL 4937287, at *5 (N.D. Cal. Aug. 1, 2023). That is the opposite of what is alleged here, where Plaintiff does not allege that "registration" for the MasterClass Website was required to view its free video content. Thus, as the *M.K.* decision would explain, she is the *same* as a person "merely view[ing] videos while surfing the web." *Id.* The Opposition's next two cases rejected the defendants' subscriber arguments, but – unlike *Kuzenski* and *Sutton* – did so without any analysis whatsoever and, thus, are of little value here. *See Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (explaining that the plaintiff created a free account, but providing no details at all about any benefits the plaintiff received, any commitments between the parties, or whether any video content was delivered); *Ghanaat v. Numerade Labs, Inc.,* 689 F. Supp. 3d 714, 722 (N.D. Cal. 2023) (rejecting subscriber analysis and only citing that the plaintiff alleged "personal information" was provided to the defendant). And the Eleventh Circuit's decision in *Ellis* explains why Plaintiff's citation to *In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) doesn't help her. In that case, the plaintiffs alleged they "received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services." *Ellis*, 803 F.3d at 1257. Here, Plaintiff only alleges she was able to "register" for MasterClass's website, but didn't receive IDs (which could be evidence of expressed association), create a lasting profile (which might be evidence of a commitment), or have access to anything other than free online video content. She cannot allege she is a VPPA subscriber.

### D. The FAC Does Not Plausibly Allege a "Knowing" Disclosure.

Finally, the Opposition does not overcome the FAC's failures to allege either (i) that MasterClass knowingly disclosed Plaintiff's Facebook ID, or (ii) that in doing so, MasterClass knew that it was disclosing information specific to a "subscriber."

Plaintiff opens with a strawman argument: she devotes several pages explaining that a Facebook ID satisfies *Eichenberger*'s "ordinary person" test for statutory PII. (Opp'n at 15-18 (citing *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir.2017).) But MasterClass never contended that a Facebook ID is not – or, at least, cannot be – "personally identifying" for the purposes of Section 2710(a)(3). Plaintiff's entire analysis has no bearing on any issue presented in the Motion.

Instead, MasterClass made a simpler point: Plaintiff does not allege any way that MasterClass knew or could have accessed her Facebook ID to begin with and, as such, she cannot credibly charge MasterClass with "knowingly disclosing" that information, as required by the VPPA. (Mot. at 17-19.)

Plaintiff raises a handful of ineffective points in response. First, the Opposition contends that MasterClass "attempts to skirt liability" by arguing that her own browser transmitted Plaintiff's Facebook ID. (Opp'n at 18.) She suggests that the issue should be resolved with discovery. (*Id.*) But Plaintiff ignores that the *FAC* itself makes this affirmative allegation. (FAC ¶ 34 (alleging that the Facebook ID is "transmitted to Facebook by the user's browser," and explaining that the IDs are stored in "one or more personally identifiable FID cookies on his or her browser").) To be sure, Plaintiff identifies some recent VPPA decisions holding that, under the facts alleged in those cases, the question of whether "Facebook rather than defendant places [a] c_user cookie on [a] user's web browser as premature at [the] motion to dismiss stage." *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) (quoting *Czarnionka v. Epoch Times Ass'n*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022)). But here, Plaintiff's own allegations settle the issue. She cannot rely on the vague pleadings used in *other* actions to move forward on imagined "factual disputes." Because she expressly alleges that *her browser* disclosed her Facebook ID to Meta, she cannot charge MasterClass with the same conduct.

Second, Plaintiff makes a point about "motive" and argues that because MasterClass allegedly installed the Facebook pixel on its website to generate revenue, "[t]his is sufficient to satisfy the VPPA's knowledge element." (Opp'n at 20.) That argument dodges the question: the issue here is knowledge; not motive. As the FAC explains, the alleged Facebook ID disclosures would not occur *unless* a given visitor to the MasterClass Website was "a Facebook user with one or more personally identifiable FID cookies on his or her browser." (FAC ¶ 34.) Accordingly, while MasterClass's use of the Pixel was unquestionably "voluntary" – i.e., it certainly didn't install it accidentally – Plaintiff alleges no facts supporting how, on a visitor-to-visitor basis, MasterClass *knew* that criteria would be met. Accordingly, she cannot allege that MasterClass "conscious[ly] . . . transmit[ed] [Plaintiff's] private information." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). That doesn't change even if MasterClass had a profit motive for its actions. If someone plays three card

monte and "finds the queen" on a given try, that doesn't mean they *knew* their selected card was a winner, even if their motive for playing was winning a $20 prize. As the Ninth Circuit acknowledged in *Eichenberger*, because Plaintiff does not allege that MasterClass ever knew or "possessed" Plaintiff's Facebook ID (and, thus, was capable of knowingly disclosing it) her VPPA claim fails. *See Eichenberger*, 876 F.3d at 986; *accord Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997) ("It is a logical impossibility for a party intentionally to disclose information that it does not know it has."), *aff'd*, 172 F.3d 51 (6th Cir. 1998).

Finally, Plaintiff does not contest that the VPPA requires that MasterClass *knew* it was disclosing information about a known subscriber to a third party. Plaintiff asks the court to "infer" that MasterClass knew it was disclosing information concerning its subscribers based on her allegations that (i) MasterClass knows the identify of individuals who register for its website and (ii) MasterClass knows that "anyone" who views prerecorded video content on its website will have their "Personal Viewing Information" shared with Facebook. (Opp'n at 20.) This asks too much. Just as Plaintiff fails to plausibly allege that MasterClass could have known that any given Website visitor was a Facebook user with "[Facebook] cookies on his or her browser," (FAC ¶ 34), Plaintiff does not allege any facts showing or even plausibly supporting that MasterClass knew whether any given visitor had "registered" for its Website. If Plaintiff were a *paid* subscriber this inference might be appropriate: MasterClass knows that if any visitor accesses its restricted video content, that visitor *must be* a paid subscriber. Paying for a subscription is the *only* way to access that video content. (FAC ¶ 27.) But the FAC does not explain how MasterClass could have known that a person viewing *free* video content on the Website – i.e., the information that Plaintiff acknowledges she accessed – was a paying subscriber, a "free" registrant (like Plaintiff), or someone visiting the Website for the very first time. Thus, Plaintiff alleges no facts satisfying the VPPA's "knowing" requirement.

## III. CONCLUSION

As far as the VPPA is concerned, Plaintiff is no different from any other first-time visitor to MasterClass's Website. For all the reasons discussed above, she cannot state a VPPA claim and her single-count complaint should be dismissed with prejudice.

Dated: April 10, 2025

**ZWILLGEN PLLC**

By: */s/ Benjamin S. Thomassen*

Benjamin S. Thomassen (*pro hac vice*)
ben.thomassen@zwillgen.com

**Attorney for Defendant**
Yanka Industries, Inc. d/b/a MasterClass